UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARL ANTHONY KNIGHT, JR.,

                              Plaintiff,

        v.                                                          9:25-CV-0996
                                                                    (MAD/PJE)

N. ANZALONE, et al.,

                              Defendants.
_____

APPEARANCES:

CARL ANTHONY KNIGHT, JR.
Plaintiff, pro se
QJ-0100
SCI DALLAS
1000 FOLLIES ROAD
DALLAS, PA 18612

LAMARCHE SAFRANKO LAW PLLC              ANDREW R. SAFRANKO, ESQ.
Counsel for Defendant Anzalone
987 New Loudon Road
Cohoes, NY 12047


MAE A. D'AGOSTINO
United States District Judge

**DECISION and ORDER**

## I.        INTRODUCTION

Plaintiff Carl Anthony Knight, Jr. commenced this action by filing a pro se civil rights

complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to

proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application").  By

Decision and Order entered on August 26, 2025, the Court granted the IFP Application,

1

reviewed the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed certain claims without prejudice, and found that plaintiff's Eighth Amendment excessive force claim against Corrections Officer Anzalone survived sua sponte review. *See* Dkt. No. 4 ("August 2025 Order").

Presently before the Court are the following: (1) plaintiff's motion to file an amended complaint and proposed amended complaint, Dkt. No. 21 ("Motion to Amend"); Dkt. No. 21-1 ("Prop. Am. Compl."); and (2) plaintiff's letter request for sanctions, Dkt. No. 24 ("Letter Request For Sanctions").

## II.    MOTION TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure, which governs amended pleadings before trial, provides, with respect to pleadings that require a responsive pleading, that a plaintiff may amend his complaint once as a matter of course within 21 days of service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. *See* Fed. R. Civ. P. 15(a)(1)(B).  In this case, the Motion to Amend and proposed amended complaint was filed before counsel filed an answer on behalf of defendant Anzalone.  Accordingly, the Motion to Amend is denied as unnecessary.

However, because plaintiff is an inmate suing one or more government employees, his proposed amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).[1]

---

[1] The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the August 2025 Order and it will not be restated in this Decision and Order.  *See* August 2025 Order at 2-4.

**III.     SUFFICIENCY OF THE PROPOSED AMENDED COMPLAINT**

**A.     The Complaint and August 2025 Order**

In the original complaint, plaintiff asserted Section 1983 claims arising out of alleged wrongdoing while he was incarcerated at Marcy Correctional Facility. *See generally*, Compl. More specifically, the complaint asserted claims arising out of an alleged use-of-force incident and officials subsequently denying plaintiff medical treatment, destroying his personal property, and placing him in restrictive confinement. *Id*. The complaint named the following officials as defendants: Corrections Officer Anzalone; Corrections Officer Swinderski; Corrections Sergeant Coomber; Marcy Correctional Facility Superintendent Thorpe; and DOCCS Commissioner Martuscello. *Id*.

The complaint was liberally construed to assert the following Section 1983 claims against the named defendants in their individual and official capacities: (1) Eighth Amendment excessive force and failure-to-intervene claims against defendants Anzalone, Swinderski, and Coomber; (2) Eighth Amendment failure-to-protect claims against defendants Swinderski and Coomber; (3) a Fourteenth Amendment destruction of property claim against defendant Swinderski; and (4) supervisory liability claims against defendants Thorpe and Martuscello. *See* August 2025 Order at 6.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), only plaintiff's Eighth Amendment excessive force claim against defendant Anzalone survived sua sponte review. *See* August 2025 Order at 7-21.

3

**B.      Review of the Proposed Amended Complaint**

As with the original complaint, plaintiff's proposed amended complaint re-asserts Section 1983 claims based on alleged wrongdoing that occurred during plaintiff's confinement at Marcy Correctional Facility, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  *See generally*, Prop. Am. Compl.  The pleading is materially similar to the original complaint, except that plaintiff includes additional details in support of his dismissed claims, and new allegations of wrongdoing by newly named defendants.  The following facts are set forth as alleged in the amended complaint.

On August 13, 2023, at approximately 8:15 a.m., plaintiff was "sitting in [his] cubicle" when defendant Swinderski contacted defendants Anzalone and Coomber and told these officials "to beat [plaintiff] profusely until [he] learn[s] [his] lesson."  Prop. Am. Compl. at 3. "These officers had a reputation for unlawfully us[ing] excessive force on incarcerated individuals mal[i]ciously and sadistically[.]"  *Id*.

Thereafter, defendants Anzalone and Coomber arrived at the scene with two other unidentified corrections officials and escorted plaintiff to the infirmary.  Prop. Am. Compl. at 3. During the escort, defendant Anzalone "yanked on the handcuffs" worn by plaintiff, causing his "skin to rip and tear and bleed[.]"  *Id*.  Thereafter, while plaintiff was in the transport van, the escorting officials "slammed [him] face first on the ground" while "saying they were gonna [sic] teach [him] a lesson[.]"  *Id*.

When plaintiff arrived at the infirmary, he was placed in an exam room, "accompanied by" defendants Anzalone, Coomber, and the two other unidentified escorting officials.  Prop. Am. Compl. at 3.  Defendant Anzalone "ran [plaintiff's] face into the wall repeatedly then

pushed [him] to the ground while him and the other officers beat [plaintiff] until [he] went unconscious." *Id*. At some point, plaintiff was also "sprayed . . . with OC pepper spray[.]" *Id*.

Following the use-of-force incident, plaintiff was relocated to the special housing unit ("SHU"). Prop. Am. Compl. at 3. Defendants Anazlone and Coomber denied plaintiff's request for medical attention and "refused to decontaminate [him.]" *Id*.

While plaintiff was confined in a SHU cell, defendant Nurse Barrette visited him. Prop. Am. Compl. at 4. Plaintiff "requested emergency medical assistance and the decontamination protocol" but defendant Barrette "refused" these requests and informed plaintiff that he "look[ed] fine." *Id*. Thereafter, defendant Anzalone issued plaintiff "a fabricated misbehavior report . . . claiming that [he] assaulted a staff member[.]" *Id*. at 3-4.

At some point while plaintiff was housed in a SHU cell, defendant Swinderski removed personal property from plaintiff's housing area and "intentionally destroy[ed]" it. Prop. Am. Compl. at 3.

Plaintiff "made a[n] OSI report to [the] Office of Special Investigations" regarding the events of August 13, 2023. Prop. Am. Compl. at 4. Defendant Marcy Correctional Facility Superintendent Medbury was made aware of the report and plaintiff's desire for "relief from SHU confinement[.]" *Id*. Defendant DOCCS Commissioner Martuscello was also "made aware" of the "malacious [sic] attacks" against plaintiff "through the Office of Special Investigations" but "ignored the reports[.]" *Id*.

Defendant Corrections Captain Chmielewski was assigned as the hearing officer for plaintiff's disciplinary hearing. Prop. Am. Compl. at 2, 4. Defendant Chmielewski informed plaintiff before the hearing started that criminal charges would not be filed against him if he pleaded guilty to the disciplinary charges. *Id*. at 4. Plaintiff "took a plea out of fear and being

5

coerced[.]" *Id*. Thereafter, plaintiff appealed the disciplinary disposition to defendant DOCCS Director of SHU Rodriguez, and "explain[ed] the reasons" for his plea. *Id*. Defendants Rodriguez and Martuscello "denied the appeal" without an investigation into plaintiff's claims. *Id*.

Liberally construed, the proposed amended complaint asserts the following claims against the named defendants in their individual and official capacities: (1) Eighth Amendment excessive force and failure-to-intervene claims against defendants Swinderski, Anzalone, and Coomber; (2) Eighth Amendment medical indifference claims against defendants Anzalone, Coomber, and Barrette; (3) Fourteenth Amendment disciplinary due process claims against defendants Chmielewski and Rodriguez; (4) a Fourteenth Amendment destruction of property claim against defendant Swinderski; and (5) supervisory liability claims against defendants Medbury and Martuscello.

Plaintiff seeks money damages and injunctive relief. Prop. Am. Compl. at 7. For a more complete statement of plaintiff's claims, reference is made to the proposed amended complaint.

### C. Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional

6

rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Official Capacity Claims

As noted in the August 2025 Order, Section 1983 official capacity claims for money damages are barred by the Eleventh Amendment. *See* August 2025 Order at 7-9. Moreover, plaintiff is no longer incarcerated at a DOCCS facility, and has not alleged facts which plausibly suggest that he faces a risk of imminent harm as a result of the wrongdoing described in the proposed amended complaint.

Accordingly, and for the reasons set forth in the August 2025 Order, plaintiff's official capacity claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment, and for failure to state a claim upon which relief may be granted.

### 2. Excessive Force and Failure-to-Intervene Claims

The legal standard governing Eighth Amendment excessive force and failure-to-intervene claims was discussed at length in the August 2025 Order and will not be restated herein. *See* August 2025 Order at 11-14.

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's excessive force and failure-to-intervene claims against defendants Swinderski, Anzalone, and Coomber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

7

### 3. Medical Indifference Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*.; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing, *inter alia*, *Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Depending on their severity, psychiatric or psychological conditions can present serious medical needs in light of our contemporary standards." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019); *Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (S.D.N.Y. 2013) ("A propensity to attempt suicide

or harm oneself is undoubtedly a serious medical condition, as are the health effects that allegedly flowed from Barnes' mental illness, such as lacerations from cutting and hanging.").

"Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'").

Non-medical personnel may be held liable for deliberate indifference to medical needs where a plaintiff demonstrates that the prison personnel intentionally denied or delayed access to medical care or intentionally interfered with medical treatment once it was prescribed. *See Banks v. No. 8932 Corr. Officer*, No. 11-CV-8359, 2013 WL 673883, at *4 (S.D.N.Y. Feb. 25, 2013) ("A prison guard's deliberate indifference to a serious medical need of a prisoner means intentionally denying or delaying access to medical care or intentionally interfering with medical treatment once it was prescribed."); *see also Estelle*, 429 U.S. at 104-05 (1976) (noting that deliberate indifference may be manifested when prison guards intentionally deny or delay access to medical care).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's medical indifference claims against defendants Anzalone, Coomber, and Barrette survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 4. Disciplinary Due Process Claims

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483-84; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658. To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998). While under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the

10

Second Circuit generally takes the position that disciplinary confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

In this case, the proposed amended complaint alleges that defendant Chmielewski coerced plaintiff into pleading guilty to disciplinary charges prior to his disciplinary hearing. The pleading, however, fails to provide any details regarding the duration or nature of plaintiff's restrictive confinement. Thus, the Court has no basis to plausibly infer from the allegations in the proposed amended complaint that plaintiff was subjected to a disciplinary sentence that imposed an "atypical and significant hardship" on him. *See Scott v. Albury*, 156 F.3d 283, 287 (2d Cir. 1998) ("No right to due process is implicated in the prison context unless a liberty interest has been deprived, and we read *Sandin* to require that we look to actual punishment in making this determination."); *Gill v. Riddick*, No. 9:03-CV-1456 (NAM/RFT), 2005 WL 755745, at *15 (N.D.N.Y. Mar. 31, 2005) ("[W]here no liberty interests are at stake, . . . the Court need not assess the adequacy of the process . . . received.").

Accordingly, plaintiff's disciplinary due process claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 5. Destruction of Property Claim

The legal standard governing a destruction of property claim was discussed at length in the August 2025 Order and will not be restated herein. *See* August 2025 Order at 17-18.

The allegations in the proposed amended complaint are materially similar to the allegations in the original complaint with respect to the alleged destruction of personal

11

property by defendant Swinderski.  Moreover, the proposed amended complaint does not allege that post-deprivation remedies were unavailable to plaintiff with respect to the allegedly lost or destroyed property.

Accordingly, and for the reasons set forth in the August 2025 Order, plaintiff's Section 1983 claim against defendant Swinderski based on the destruction of personal property is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 6. Supervisory Liability Claims

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'"  *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

If a defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676 and holding that "there is no special rule for supervisory liability").

12

Here, plaintiff names Marcy Correctional Facility Superintendent Medbury and DOCCS Commissioner Martuscello as defendants based on allegations that these officials became aware of the use-of-force incident and plaintiff's placement in restrictive confinement through plaintiff's report to the Office of Special Investigations and failed to investigate or remedy plaintiff's complaints.

As an initial matter, the proposed amended complaint is devoid of allegations explaining how defendants Medbury and Martuscello may have become aware of a complaint plaintiff filed with the Office of Special Investigations.

In any event, the law is well-settled that inmates do not have a constitutional right of access to an investigation into alleged wrongdoing, and that the failure to remedy harm that is not ongoing cannot give rise to a cognizable Section 1983 claim. *See, e.g., DeShaney v. Winnebego Soc. Servs*., 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("To the extent that plaintiffs attempt to assert a separate constitutional claim of 'failure to investigate,' the law is . . . clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.") (citing *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases)); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation."); *cf. Burton v. Lynch*, 664 F. Supp. 2d 349, 362 (S.D.N.Y. 2009) ("A superintendent cannot 'remedy' a violation of constitutional rights which has already ceased by ordering

13

some change in prison conditions."); *Tripathy v. Schneider*, No. 21-CV-6392, 2021 WL 4504461, at *3 (W.D.N.Y. Oct. 1, 2021) (dismissing Section 1983 claim against Commissioner of New York State Department of Corrections and Community Supervision and Governor of New York where complaint alleged only that these officials "failed to respond" to plaintiff's complaints of wrongdoing, noting that "the failure to respond to letters protesting unconstitutional actions and/or requesting an investigation is, without more, insufficient to establish personal involvement"); *Brown v. Montone*, No. 17-CV-4618, 2018 WL 2976023, at *4 (S.D.N.Y. June 13, 2018) ("It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (quoting *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017)).

Moreover, a supervisory official's decision to defer to the disciplinary process is not a basis for finding personal involvement in any wrongdoing arising out of that process. *See, e.g., Coleman v. Hamilton*, No. 9:24-CV-0455 (AMN/CFH), 2024 WL 4041696, at *5 (N.D.N.Y. Sept. 4, 2024) ("[E]ven assuming that Superintendent Doe learned about the disciplinary charges brought against plaintiff at some point before he was released from restrictive confinement, deferring to the administrative process is not a basis for finding personal involvement in the alleged wrongdoing." (collecting cases)).

Simply put, the Court has no basis to plausibly infer from the allegations in the proposed amended complaint that either Superintendent Medbury or DOCCS Commissioner Martuscello was personally involved in violating plaintiff's federal rights.

Accordingly, plaintiff's Section 1983 claims against defendants Medbury and Martuscello are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28

U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## IV. LETTER REQUEST FOR SANCTIONS

One week after the Court received plaintiff's Motion to Amend, counsel for defendant Anzalone filed an answer to the complaint. *See* Dkt. No. 19 ("Answer"). That same day, a mandatory pretrial discovery and scheduling order was issued, which requires that initial disclosures be exchanged by April 20, 2026. *See* Dkt. No. 20 at 1-3.

On March 12, 2026, the Court received plaintiff's Letter Request For Sanctions, which asks that the Court impose sanctions against defendant Anzalone based on counsel's failure to timely respond to the complaint. *See* Dkt. No. 24.

As an initial matter, plaintiff's submission was not filed as a proper motion in accordance with the Local Rules of Practice for this District. *See* N.D.N.Y. L.R. 7.1. Moreover, a notice of appearance was not filed in this case until December 9, 2025. *See* Dkt. Nos. 14, 15, 16. Before this date, a representative from the New York State Attorney General's Office advised the Court that the New York State Attorney General's Office was unable to represent defendant Anzalone, and requested an extension of the answer deadline to January 29, 2026. *See* Dkt. No. 12. Although Magistrate Judge Evangelista granted this extension request, at the time it was made, the New York State Attorney General's Office did not represent defendant Anzalone, who had yet to acknowledge service. Furthermore, following counsel's appearance on behalf of defendant Anzalone, Judge Evangelista extended the response deadline to February 20, 2026. *See* Dkt. No. 18. The Answer was filed on February 19, 2026. Thus, plaintiff's request for sanctions is also meritless.

In light of the foregoing, the Letter Request For Sanctions is denied.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the Motion to Amend (Dkt. No. 21) is **DENIED** as unnecessary; and it is further

**ORDERED** that the proposed amended complaint (Dkt. No. 21-1) is accepted for filing and will supersede and replace the original complaint as the operative pleading. The Clerk is directed to docket this filing as the amended complaint; and it is further

**ORDERED** that the Clerk add the following officials to the docket as defendants: (1) Nurse Barrette; (2) Corrections Captain Chmielewski; (3) Marcy Correctional Facility Superintendent Medbury; and (4) DOCCS Director of SHU Rodriguez; and it is further

**ORDERED** that the following claims **SURVIVE sua sponte review**: (1) plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants Swinderski, Anzalone, and Coomber; and (2) plaintiff's Eighth Amendment medical indifference claims against defendants Anzalone, Coomber, and Barrette; and it is further

**ORDERED** that plaintiff's Section 1983 official capacity claims are **DISMISSED with prejudice** as set forth above; and it is further

**ORDERED** that plaintiff's remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the Clerk shall issue summonses and forward them, along with three copies of the amended complaint, to the United States Marshal for service upon defendants Swinderski, Coomber, and Barrette;[2] and it is further

**ORDERED** that upon the completion of service, a response to the amended complaint be filed by defendants Swinderski, Anzalone, Coomber, and Barrette, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff's Letter Request For Sanctions (Dkt. No. 24) is **DENIED** as set forth above; and it is further

**ORDERED** that the Clerk shall **TERMINATE** all defendants other than Swinderski, Anzalone, Coomber, and Barrette; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action; and it is further

---

[2] The Clerk need not issue a summons for defendant Anzalone because this official has already been served and appeared in this action.  *See* Dkt. Nos. 14-17, 19.

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff and counsel for defendant Anzalone.

**IT IS SO ORDERED**.

Dated:  March 25, 2026
        Albany, NY

Mae A. D'Agostino
U.S. District Judge